DECISION AND JOURNAL ENTRY
{¶ 1} Appellants/Cross-Appellees, Arnold Levin, James Levin, Frank Levin (collectively, the "Levins") and the Fifth Street Realty Company ("Fifth Street Realty"), appeal, and Appellees/Cross-Appellants, Thomas Jordan and Sheffield Lake, Incorporated (collectively, "Jordan"), cross-appeal, from the judgment of the Lorain County Court of Common Pleas. We affirm.
 I. {¶ 2} This appeal stems from a cause of action filed against Jordan for alleged flooding and damage to real property that was previously owned by the Levins from some time prior to 1970. The Levins' land is located on the south side of Lake Road in Sheffield Lake, Ohio, in Lorain County. Jordan owns the land on the north side of Lake Road, opposite the Levins' land. Day Ditch is a natural water course and part of the water drainage system of Defendant, the City Sheffield Lake (the "City"), which flows from the southern limits of the City through the Levins' land, a culvert under Lake Road, through Jordan's land and into Lake Erie.
 {¶ 3} On September 17, 1984, Plaintiffs, Myrtle Prince and Robert Levin, and Frank and Arnold Levin, filed a complaint against Jordan and the City.[1] In the complaint, these individuals claimed that in the year 1970, Jordan obstructed the flow of water in the Day Ditch by installing a 48-inch drainage pipe in the Day Ditch and by filling the ditch with soil and other fill material. The Levins asserted that this caused Day Ditch to flood and erode the land on both sides of Day Ditch, especially during heavy rainfall. Additionally, the parties asserted that several times between 1970 and 1983 they requested that the City require Jordan to restore Day Ditch to its original state, but that the City failed to do so. Additionally, the Levins asserted a takings claim against the City, claiming that the flooding caused by Jordan caused the Levins' lands to serve as a holding basin for water for Day Ditch and the City's sewer system, which the Levins assert constitutes an unconstitutional appropriation of their property without just compensation.
 {¶ 4} The Levins asserted that Jordan and the City's actions, or lack thereof, deprived them of the use of their land and the opportunity to sell the land, and that the value of the land has been reduced by the damage. In the complaint, the Levins sought monetary damages and an injunction against the City to commence the procedure to appropriate and compensate the Levins for the alleged taking.
 {¶ 5} In their answer, Jordan raised the affirmative defenses of statute of limitations and laches, and asserted an indemnification cross-claim against the City, or in the alternative a cross-claim for joint liability to the Levins. On April 25, 1985, the City filed a counterclaim against Jordan for indemnification, or in the alternative joint and several liability on Jordan's part.
 {¶ 6} On July 22, 1985, the Levins filed a motion for partial summary judgment, asserting that Jordan's affirmative defenses of laches and the statute of limitations did not prevail. On September 13, 1985, the court granted summary judgment for the Levins as to those defenses, finding that the defenses did not apply as a matter of law to bar their claims.[2]
 {¶ 7} On October 18, 1990, Jordan filed a motion for summary judgment against the Levins, asserting that the City is solely liable for the asserted negligence. On November 26, 1990, the Levins moved for partial summary judgment against Jordan and the City on the issue of liability alone, and moved to reserve the issue of the amount of damages for a jury trial. On June 14, 1995, the City filed a motion for partial summary judgment as to the Levins' complaint. On April 2, 1996, the City filed a motion for summary judgment on their counterclaim against Jordan.
 {¶ 8} On April 26, 1996, the Levins and Fifth Street Realty sold their entire right, title, and interest in the property to the City for approximately $62,500.00, and the Levins and the City agreed to settle the case as between them. On May 1, 1996, the trial court dismissed all claims against the City, but specifically reserved the Levins and Fifth Street Realty's claims against Jordan. Thereafter, Jordan also filed a motion for summary judgment against the Levins. On August 26, 1997, the court denied the summary judgment motions of the City against Jordan and of the Levins against Jordan. However, the court granted Jordan's summary judgment motion against the Levins. The court stated that because the Levins had sold the property to the City with a limited warranty deed that the transfer had divested them of any continuing interest in the land or possible damages arising out of the land by transferring those rights to the City.
 {¶ 9} The Levins and Fifth Street Realty appealed to this Court from the trial court's grant of summary judgment. In a decision and journal entry dated September 30, 1998, we reversed the decision of the trial court and remanded the case for further proceedings consistent with our decision. Prince v. Jordan (Sept. 30, 1998), 9th Dist. No. 97CA006906. This Court concluded, in part, that the trial court erred in granting summary judgment in Jordan's favor. We reasoned that (1) the cause of action against Jordan was a chose of action, and therefore personal property, separate and distinct from the real property interest and which did not transfer with the real property, (2) Jordan had failed to meet his burden of demonstrating that the Levins and Fifth Street Realty have no evidence to support their claims, and (3) the Levins and Fifth Street Realty had satisfied their reciprocal burden of setting forth specific facts showing a genuine issue of material fact as to whether Jordan's acts caused flooding and damage. Id. Upon remand, the case was transferred to another trial judge and set for a jury trial.[3] In October 2000, a jury returned a verdict in favor of the Levins, finding Jordan liable for negligence and awarding $100,000 in compensatory damages and $25,000.00 in punitive damages, plus attorney fees. The jury also found in favor of the City on Jordan's cross-claim for indemnification. On October 23, 2000, the trial court entered judgment accordingly.
 {¶ 10} On October 30, 2000, the Levins filed a motion for pre-judgment interest. On November 1, 2000, Jordan filed a JNOV motion or in the alternative a motion for a new trial, a motion for remittitur, and a motion to stay proceedings to enforce the judgment. In his JNOV motion, Jordan asked the court to enter judgment in their favor as to liability, damages, and attorney fees. Jordan argued that the Levins failed to present any competent admissible evidence entitling them to an award of damages, that the Levins failed to demonstrate actual malice on Jordan's part to warrant punitive damages, and that the Levins' claim for punitive damages is barred by the statute of limitations. In the alternative, Jordan requested a new trial on the Levins' claims and on Jordan's cross-claim against the City for indemnification.
 {¶ 11} In their brief in opposition to Jordan's motion, the Levins noted that Jordan could not now raise the affirmative defense of statute of limitations because that issue had already been determined in the Levins' favor by the court in its grant of partial summary judgment in 1985.
 {¶ 12} On November 2, 2000, the court ordered a temporary stay of execution of its judgment. On November 17, 2003, the Levins filed their motions for attorney fees based upon the jury's award of punitive damages. On September 4, 2003, the Levins filed a motion to request a ruling on the motions for JNOV and new trial.
 {¶ 13} On December 15, 2003, the trial court issued an order that granted in part the Levins' JNOV motion. The court vacated and set aside the verdict with respect to punitive damages. The court found that the evidence adduced at trial did not support an award of punitive damages because the negligence in this case did not rise to the level of misconduct having the great probability of causing substantial harm sufficient to constitute actual malice. The court also found that the award of punitive damages was barred by the statute of limitations. Due to the court's disposition of the punitive damages verdict, it denied the Levins' motions for attorney fees based on the punitive damages award.
 {¶ 14} In addition, the court denied the JNOV motion with respect to the issues of negligence, proximate cause, and compensatory damages, stating that there was evidence of substantial probative value to permit the jury to find in favor of the Levins on these issues.
 {¶ 15} Regarding Jordan's motion for a new trial, the court found that this motion was moot with respect to the issues of punitive damages and attorney fees because the court had already entered judgment on these issues. The court denied the motion with respect to the issues of negligence and proximate cause.
 {¶ 16} However, the court did also vacate and set aside the verdict and judgment regarding compensatory damages and granted Jordan's motion for a new trial with respect to that issue. The court reasoned that there was insufficient evidence to justify the award of $100,000 in compensatory damages. The court refused to grant a new trial as to Jordan's indemnifications cross-claim against the City. In addition, the court found that the Levins were not entitled to prejudgment interest and therefore denied their motion for the interest. Finally, the court denied Jordan's motion for remittitur. It is from this order that the Levins appeal and Jordan cross-appeals.
 {¶ 17} The Levins timely appealed, asserting five assignments of error for review. Jordan filed a timely cross-appeal, asserting one cross-assignment of error for review. We address the Levins' fourth assignment of error first, and address their first, second, and third assignments of error together, to facilitate review.
 II. A. Fourth Assignment of Error
"The lower court erred by deciding that there was insufficient evidence to support the verdict for $100,000 compensatory damages[.]"
 {¶ 18} In their fourth assignment of error, the Levins contend that the trial court erred when it decided that there was insufficient evidence presented to support an award of $100,000 in compensatory damages and granted a new trial on that issue. We disagree.
 {¶ 19} The resolution of a motion for a new trial lies "in the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion." Pena v. Northeast Ohio EmergencyAffiliates, Inc. (1995), 108 Ohio App.3d 96, 103. An abuse of discretion is manifest when the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When a trial court's decision on a motion for a new trial involves a question of fact, a reviewing court must view the evidence in a light favorable to the trial court's decision rather than the jury's verdict. Osler v. Lorain (1986), 28 Ohio St.3d 345, 351, citing Jenkins v. Krieger (1981), 67 Ohio St.2d 314, 320.
 {¶ 20} In this case, the trial court granted a new trial on the sole issue of compensatory damages pursuant to Civ.R. 59(A)(4) and (5), and for good cause shown. Civ.R. 59(A)(4) provides that a trial court may grant a new trial on the grounds of excessive or inadequate damages that appear to be the product of passion or prejudice. "To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities." Pena, 108 Ohio App.3d at 104, citing Jeannev. Hawkes Hosp. of Mt. Carmel (1991), 74 Ohio App.3d 246, 257.
 {¶ 21} Additionally, Civ.R. 59(A)(5) provides that a new trial may be granted on the basis of an "[e]rror in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property[.]" Furthermore, Civ.R. 59(A) contains a catch-all phrase, pursuant to which a new trial may be granted "in the sound discretion of the court for good cause shown."
 {¶ 22} A plaintiff bears the burden of proof on damages. Henderson v.Spring Run Allotment (1994), 99 Ohio App.3d 633, 641, citing Grantham Mann, Inc. v. Am. Safety Prods., Inc. (C.A.6, 1987), 831 F.2d 596,601. Without adequate proof of damages, an award of damages in any amount cannot be sustained. Id. Furthermore, the resulting damages must be shown with "`reasonable certainty, and cannot be based upon mere speculation or conjecture, regardless of whether the action is contract or tort.'"Henderson, 99 Ohio App.3d at 642, quoting Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 17.
 {¶ 23} In its judgment entry vacating the compensatory damages award, the trial court observed that it was unclear whether the Levins sought damages that were temporary or permanent in nature. The Levins maintain that they sought damages for the loss of use of the land. A party may recover restoration costs and the loss of the use of the property during the period of temporary injury. Henderson, 99 Ohio App.3d at 640, citing Reeser v. Weaver Bros., Inc. (1992), 78 Ohio App.3d 681, 691-92. In this case, the Levins neither occupied nor rented the land. In addition, there was no indication from the Levins that they even intended to develop this land; rather, the testimony merely demonstrated that they intended to sell the land for a profit. "`A plaintiff may recover profits lost as a result of a defendant's tortious conduct if such damages may naturally be expected to follow from the wrongful act and if the damages are reasonably ascertainable.'" Henderson, 99 Ohio App.3d at 644, quoting Henry v. Akron (1985), 27 Ohio App.3d 369, 372.
 {¶ 24} Arnold Levin ("Arnold") testified that due to their inability to use or sell the land, they lost interest they could have earned if they had been able to sell the land for a certain price and invest the proceeds in certificates of deposit. Arnold points to Gersna's report which estimated an average potential earned interest of approximately $200,000. The Levins presented evidence of potential profits to be earned from the investment of the land sale proceeds. The Levins propose to this Court that such figures should be used to calculate and derive a monetary figure for the loss of use of the land.
 {¶ 25} We refuse to extend the value for loss of use of real property to encompass the use of proceeds of the land for other purposes. In fact, this Court has already determined in another case that the valuation of the loss of use of property held for commercial sale does not include the amount of interest paid on the real property. SeeHenderson, 99 Ohio App.3d at 643-44. Building on our decision inHenderson, we also refuse to hold that interest from investments made with real property sale proceeds can be included in loss of use calculations. We are not aware of any precedent that allows such a valuation. Moreover, the Levins do not cite any applicable caselaw for such a proposition, and, in this respect, have failed to meet their burden on appeal. See App.R. 16(A)(7); Loc.R. 7(A)(7).
 {¶ 26} At trial, Arnold also testified, that, as a result of the frequent flooding, nothing could be built on the property. He stated, that, although they finally sold the land to the City as part of a settlement agreement, the Levins were not successful in selling it to others because of the flooding. Arnold testified that the Levins had provided their certified public accountant, Robert Gersna ("Gersna"), with information to calculate the damages suffered from the flooding. This information included a list of sales of vacant land on Lake Road, which land was not owned by the Levins, but that had frontage comparable to the Levins' land, as well as data obtained from Lorain County Auditor Office as to the County's appraisal of the fair value of other similar lands on Lake Road. Arnold asserted that this information could be employed to calculate what the Levins could probably have sold their land for in 1970, 1980, and 1990 absent the flooding problem.
 {¶ 27} In their brief on appeal, the Levins only refer to Gersna's testimony regarding his valuation of the market value of the land; his calculations yielded an average market value of $8,650 in 1969-1970, and $21,335 in the 1970's. The evidence presented at trial indicates that the Levins bought the parcels of land for approximately $275 in 1945. A real estate appraiser and consultant, Richard Master ("Master"), testified on behalf of the City regarding an appraisal of the property that he had conducted for the City in 1987. The appraisal revealed a fair market value of $10,500. Master could not, however, present a figure for the fair market value of the property in 1970, because he had not had an opportunity to analyze the pertinent figures for 1970.
 {¶ 28} Based upon our review of the evidence in the record, we find that the jury's award is unreasonably disproportionate to the evidence presented at trial. See Pena, 108 Ohio App.3d at 104; Jeanne,74 Ohio App.3d at 257; Civ.R. 59(A)(4)-(5). Therefore, we cannot conclude that the trial court abused its discretion in vacating the jury award for compensatory damages and ordering a new trial on this issue. See Blakemore, 5 Ohio St.3d at 219. The Levins' fourth assignment of error is overruled.
 B. First Assignment of Error
"The lower court erred by granting appellees' motion for judgment notwithstanding the verdict for punitive damages[.]"
 Second Assignment of Error
"The lower court erred by deciding that appellants' claim for punitive damages is barred by the statute of limitations."
 Third Assignment of Error
"The court erred by denying plaintiff's motions for attorney fees[.]"
 {¶ 29} In their first, second, and third assignments of error, the Levins' challenge the trial court's partial grant of Jordan's JNOV motion with respect to punitive damages. Specifically, the Levins contend that the trial court erred in vacating and setting aside the punitive damages award and in consequently denying attorney fees based on the punitive damages.
 {¶ 30} Due to our disposition of the Levins' fourth assignment of error, it would be premature to make a determination on the Levins' first, second, and third assignments of error dealing with punitive damages and attorney fees on those damages. See Cashion v. Segal (May 15, 1996), 9th Dist. No. 17411 (stating that "punitive damages may not be awarded absent proof of actual damages"), citing Cabe v. Lunich (1994),70 Ohio St.3d 598, 601. Therefore, we need not address these assignments of error.
 C. Fifth Assignment of Error
"The lower court erred by instructing the jury to disregard some of the testimony of CPA of [sic.] Gersna[.]"
 {¶ 31} In their fifth assignment of error, the Levins challenge the trial court's jury instruction to disregard Gersna's testimony regarding the Levins' potential to achieve certain financial profits from the investment of the proceeds of any sale of the property.
 {¶ 32} However, due to our determination of the Levins' fourth assignment of error, their challenge to this jury instruction is now rendered moot. Therefore, we need not address it. See App.R. 12(A)(1)(c).
 B. Cross-Assignment of Error
"The trial court erred when it denied in part cross-appellants' motion for new trial."
 {¶ 33} In his sole cross-assignment of error, Jordan challenges the trial court's refusal to grant a new trial on the issues of whether Jordan proximately caused damage to the Levins' property, and whether the City should be held liable to Jordan as a result. Jordan specifically contends that the jury's verdict with respect to these two issues is against the manifest weight of the evidence and contrary to law.
 {¶ 34} In this case, Jordan challenges the jury verdict regarding proximate cause as being against the manifest weight of the evidence, per Civ.R. 59(A)(6). When an appellate court reviews the grant or denial of a motion for a new trial as against the weight of the evidence, the appellate court does not directly review whether the judgment was against the manifest weight of the evidence. Snyder v. Singer (May 17, 2000), 9th Dist. No. 99CA0020. When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses. Edwards v. Haase (Aug. 1, 2001), 9th Dist. No. 3121-M. However, the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred. Id.;Burns v. Krishnan (Jan. 28, 1998), 9th Dist. No. 96CA006650, citingOsler, 28 Ohio St.3d at 351. Thus, an appellate court reviews the court's decision on that matter for an abuse of discretion. Id. Absent some indication that the trial court's exercise of its discretion was unreasonable, arbitrary, or unconscionable, the judgment of the trial court will not be disturbed. Snyder, supra.
 {¶ 35} A trial judge should "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." (Internal quotations omitted.) Bland v. Graves (1993),85 Ohio App.3d 644, 651. Where a verdict is supported by competent substantial and apparently credible evidence, a motion for a new trial will be denied. Verbon v. Pennese (1982), 7 Ohio App.3d 182, 183. Additionally, in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness. State v. Jackson (1993),86 Ohio App.3d 29, 33.
 {¶ 36} In this case, the trial court denied the Levins' motion for a new trial with respect to the issue of whether Jordan had proximately caused the flooding of the Levins' land, finding that the evidence was sufficient to support the jury's verdict on that issue. Jordan argues that the evidence adduced at trial indicates that Day Ditch would have flooded in any event, independent of its installation of the drainage pipe, due to the City's installation of a sewage line across the width of the culvert, and the City's re-routing of the drainage system in 1984.
 {¶ 37} However, Jordan has failed to include sufficient and pertinent references to the record in support of this assignment of error. Loc.R. 7(E) provides that "[r]eferences to the pertinent parts of the record shall be included in the * * * argument section of the brief. If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument."
 {¶ 38} In support of his argument that the City's sewer system and re-routing of certain drainage systems proximately caused the flooding to the Levins' land, Jordan references several portions of the record. First, Jordan references testimony from witnesses who saw flooding in this area prior to Jordan's installation of the drainage pipe. Second, Jordan points to testimony of a registered surveyor employed by Jordan in 1988, who measured the sewage line that runs perpendicular to the culvert. Finally, Jordan cites testimony that reveals, that, before the Levins filed suit, the City had dug a new, wider channel to redirect an existing culvert system.
 {¶ 39} Jordan asserts that these two events are superseding intervening factors that increased the amount of water entering the Levins' land, and that this volume of water exceeded that which was capable of exiting the land. Jordan baldly asserts that this testimony establishes a causal relationship between the City's actions and the flooding of the Levins' land. However, we do not find even a trace of such a suggestion in the testimony cited. This testimony, standing alone, is insufficient to substantiate Jordan's assertion. Therefore, Jordan has failed to meet his burden on appeal, and therefore, we may disregard this argument on this basis. See Loc.R. 7(E); Smith v. AkronDept. Public Health, 9th Dist. No. 21103, 2003-Ohio-93.
 {¶ 40} Jordan also asserts that he proceeded with the installation of the drainage pipe in reliance upon the City's guidance and approval, and that Jordan took all steps necessary to comply with any existing mandates of the City. Jordan appears to argue that this reliance also serves as a ground for absolving him from liability to the Levins for negligence. However, Jordan fails to further develop this argument with references to any applicable legal authorities. An appellant bears the burden of affirmatively demonstrating the error on appeal, and substantiating his or her arguments in support. Angle v. W. Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086. See, also, App.R. 16(A)(7) and Loc.R. 7(A)(7). "If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673. When an appeal comes before this Court for review, "[i]t is not the function of this [C]ourt to construct a foundation for a party's claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kremer v. Cox (1996), 114 Ohio App.3d 41, 60. Therefore, we also decline to address this argument.
 {¶ 41} Jordan's sole cross-assignment of error is overruled.
 III. {¶ 42} The Levins' fourth assignment of error is overruled. The Levins' remaining assignments of error are not addressed. Jordan's cross-assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Slaby, P.J., Boyle, J. concur.
[1] Myrtle Prince and Robert M. Levin were co-trustees of the Marc Amy Trust, and at some point distributed all assets of the trust to the beneficiaries, who are unidentified, also assigning their interest as plaintiffs in this case to the beneficiaries. The beneficiaries then assigned all their interests in the case to Fifth Street Realty.
[2] On July 9, 1987, Sheffield Lake, Inc. filed a counterclaim against the Levins for damage to their property from flood waters and debris that had crossed over to its property. On November 19, 1987, the Levins filed a cross-claim against the City for indemnification for any potential liability arising from the 1987 water overflow. Thereafter, Jordan voluntarily dismissed their counterclaim against the Levins.
[3] James Levin, Executor of the estate of Frank Levin, who was then deceased, was substituted as plaintiff in place of Frank Levin. In addition, Fifth Street Realty, Inc. also substituted Myrtle Prince and Robert Levin as successor in interest to their property.