DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Douglas T. Grubb has appealed from his conviction in the Summit County Court of Common Pleas of burglary. This Court affirms.
 I {¶ 2} On June 29, 2004, Defendant-Appellant was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, and one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Appellant entered "not guilty" pleas to both charges in the indictment. On August 16, 2004, prior to the commencement of a jury trial, Appellant changed his plea on the assault charge and pled "guilty" to that charge. The burglary charge was then tried to the jury and Appellant was found guilty.
 {¶ 3} Appellant has timely appealed his burglary conviction, asserting three assignments of error. For ease of analysis we first address Appellant's third assignment of error and Appellant's first and second assignments of error have been consolidated.
 II Assignment of Error Number Three
"The trial court erred in its instruction to the jury on the element of force."
 {¶ 4} In his third assignment of error, Appellant has argued that the trial court erred in its definition of "force" to the jury. Specifically, Appellant has argued that the trial court erred by including the term "effort" in the instruction.
 {¶ 5} Absent plain error, a party waives any challenge to jury instructions in a criminal case unless that party "objects before the jury retires to consider its verdict, stating specifically the mater objected to and the grounds of the objection." Crim.R. 30(A); State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325, at ¶ 75, certiorari denied (2003), 540 U.S. 865,124 S.Ct. 182, 157 L.Ed.2d 119. The record reveals that Appellant failed to object at trial to the jury instructions and has not argued plain error. Accordingly, "[h]e has waived his right to appeal on this alleged error." State v. Shipley, 9th Dist. No. 03CA008275, 2004-Ohio-434, at ¶ 8; Civ.R. 30(A). Appellant's third assignment of error is without merit.
 Assignment of Error Number One
"Appellant's conviction was based upon insufficient evidence as a matter of law."
 Assignment of Error Number Two
"Appellant's conviction was against the manifest weight of the evidence."
 {¶ 6} In his first and second assignments of error, Appellant has argued that there was insufficient evidence to convict him and that his conviction was against the manifest weight of the evidence. Specifically, Appellant has argued that the State failed to establish "force" and "trespass" as required for a burglary conviction. We disagree.
 {¶ 7} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 8} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 10} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 11} Appellant was convicted of burglary in violation of R.C. 2911.12(A)(1). Pursuant to R.C. 2911.12(A)(1):
"No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person * * * is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]"
 {¶ 12} Appellant has alleged that the State failed to establish the "force" and "trespass" elements of burglary. The State has responded that the victim's credible testimony established "force" and "trespass" and that the jury obviously believed the victim over Appellant's girlfriend and this Court must defer to their judgment.
 {¶ 13} The trial court defined "force" as "any violence, compulsion, effort, or constraint used by any means upon or against the person or thing to gain entrance." Trespass was defined as Appellant "knowingly enter[ing] the premises of [the victim] without privilege to do so."
 {¶ 14} During the trial, the State presented testimony from three witnesses. Joel Neidenthal ("Joel") testified to the following. Joel has been married to Elisabeth Neidenthal ("Elisabeth") for nine years and they have two children. Joel and Elisabeth's home is through the Akron Metropolitan Housing Authority ("AMHA") and the AMHA contract and the rental agreement are in both Joel and Elisabeth's names. The house has a detached garage and a screened in patio walkway from outside the garage to the house. Within the screened in walkway is a patio area directly in front of the door into the house. From inside the kitchen, one can see the road, the garage, and anything coming from the east towards the house.
 {¶ 15} Joel continued his testimony, testifying to the following. Elisabeth dated Appellant in high school. One day, while Joel was at work, Elisabeth called and said that Appellant was at their house and he had nowhere to stay. Joel decided Appellant could stay with them. Appellant was really "sweet" to Elisabeth, but "real nasty" to Joel and the children. During the three months Appellant stayed with Joel and Elisabeth, Appellant would tell Joel that he would end up with Elisabeth and he wouldn't give up until he had her. On three or four different occasions during the time Appellant stayed with Joel and Elisabeth, Joel would drive Appellant to new place to stay and tell Appellant he was not welcome back. The most recent time Joel kicked Appellant out of his home was about two weeks before Father's Day when Appellant informed Joel he was sleeping with Elisabeth. Elisabeth's uncle came over and told Appellant he had to leave and that he would drive him wherever he wanted to go. Joel told Appellant he was not allowed back into his house, on the property, or near his family.
 {¶ 16} Joel continued testifying to the following. On June 20, 2004, Joel and Elisabeth were standing in their kitchen when Elisabeth noticed Appellant approaching their house. Joel was shocked when he first saw Appellant on his property because he had told Appellant to stay away. Joel could hear Appellant "ranting [and] raving" about something and Elisabeth went outside to "try to stop him." Joel could hear Appellant calling Elisabeth a "liar" and then he heard the "outside door smack up against the garage." Appellant then came "running in" and asked where Joel was, saw him in the kitchen and swung at him. Joel ducked and fell to the ground on his stomach. Appellant then got on top of Joel and began "pounding [Joel] in the back of the head." Joel was not able to defend himself because Appellant was on his back. Elisabeth pulled Appellant off of Joel and Elisabeth and Appellant went outside and began arguing. Elisabeth came into the house and said she was going to take Appellant away from the house. As a result of Appellant hitting him, Joel had "goose egg[s]" on the back of his head and scrapes on his elbows and knees. Joel did not give Appellant permission to enter his home on June 20, 2004. After Elisabeth came inside, Joel picked up the phone to call the police, but two officers were already coming down the street. Joel told the officers what had happened and that he wanted to press charges. Joel also completed a police report.
 {¶ 17} Joel testified to the following on cross-examination. On June 20, 2004, Elisabeth and Appellant were arguing about two or three minutes before Appellant entered the house. Joel never said anything to Appellant that day before Appellant entered the house and started hitting him. Joel saw Appellant push Elisabeth out of the way in order to enter the house.
 {¶ 18} Officer Amy Brauning of the Springfield Township Police Department ("SPD") testified to the following for the State. While working on June 20, 2004, Officer Brauning and another officer responded to an anonymous 911 call about a domestic dispute at Joel and Elisabeth's home. When Officer Brauning arrived, Joel was exiting his home with his two children. Joel and the children were upset and Joel had visible injuries; specifically, Joel was bleeding from his elbows and knees and he had welt marks on the back of his head. Joel informed Officer Brauning that Appellant had just entered his home and attacked him.
 {¶ 19} The other officer left to attempt to locate Appellant and Officer Brauning stayed on scene to interview Joel. In order for all of the information to be collected, Officer Brauning had Joel recount the events several times. Officer Brauning then took Joel and the children to the police station so Joel could sign a complaint against Appellant.
 {¶ 20} On cross-examination, Officer Brauning testified to the following. She did not interview Appellant and Elisabeth because when she arrived on the scene they were no longer there.
 {¶ 21} Officer Dan Wagner of the SPD testified to the following for the State. Officer Wagner also responded to a dispatch about a fight at Joel and Elisabeth's house. Joel informed Officer Wagner that Appellant had entered his house and assaulted him and then left with his wife. Joel told him where he thought Appellant and Elisabeth went and Officer Wagner informed that city's police department. Officer Wagner then drove to the given address and spoke with Elisabeth. She informed him that Appellant "just came" into the house and they started fighting. Elisabeth never indicated to Officer Wagner that she had given Appellant permission to enter the house.
 {¶ 22} After the State rested its case, Appellant made a Crim.R. 29 motion and the trial court denied the motion.
 {¶ 23} During the trial, Elisabeth testified to the following for Appellant. On June 20, 2004, after Elisabeth and her family had just returned from dinner she noticed Appellant riding his bike towards her house. She went outside to talk to him and then invited him inside. Elisabeth and Appellant were talking inside the house for about ten or fifteen minutes and then Appellant "brushed" her out of the way and went "into the house." Elisabeth did not see what happened next. When Elisabeth entered the kitchen she saw Appellant on top of Joel; she thought it looked like a wrestling move. She did not see anyone throw a punch. Elisabeth was able to pull Appellant off of Joel. She then took Appellant to his grandmother's house. Elisabeth denied speaking to the police about the incident. Elisabeth denied visiting Appellant in jail or speaking to him.
 {¶ 24} Elisabeth testified to the following on cross-examination. She admitted visiting Appellant in jail twice and had a third visit planned until a sheriff's deputy informed her that she was not allowed to visit due to a filed protection order. She admitted having an affair with Appellant. Elisabeth admitted calling the prosecutor and asking him to drop the charges against Appellant and asking him to refrain from telling Joel that she called. Elisabeth and Appellant dated for about five months in high school and then did not see each other until about 15 years later, after she had married Joel and had two children with him. When Appellant came to the house on June 20, 2004, she could tell he had been drinking and was mad. She admitted that when Appellant brushed past her, she went back and hit the door and it made the noise heard by Joel. She admitted that she did speak to the police the day of the incident. Elisabeth also admitted that she is still in love with Appellant.
 {¶ 25} Elisabeth testified on re-direct examination that she let Appellant enter her house on June 20, 2004 and that they were "[r]ight in the beginning of [the] kitchen[.]"
 {¶ 26} At the close of Appellant's case, he renewed his Crim.R. 29 motion which was again denied by the trial court.
 {¶ 27} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of burglary. The trial court was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the testimony of Joel and the SPD officers over Elisabeth's testimony, which contained several internal inconsistencies. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423,2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993),86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 28} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at 4. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's first and second assignments of error are without merit.
 III {¶ 29} Appellant's three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant. Exceptions.
Carr, J. Baird, J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)