DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Darrell Pruiett has appealed from the decision of the Summit County Court of Common Pleas that denied his motion for acquittal under Crim.R. 29. This Court affirms.
 I {¶ 2} On January 20, 2005, Defendant-Appellant Darrell Pruiett was indicted on one count of rape, in violation of R.C.2907.02(A)(2), with a firearm specification; one count of kidnapping, in violation of R.C. 2905.01(A)(2)/(4), with a firearm specification; and one count of felonious assault, in violation of R.C. 2903.11(A)(1), with a firearm specification. Appellant waived reading of the indictment and entered "not guilty" pleas to the charges in the indictment.
 {¶ 3} A supplemental indictment was filed against Appellant on February 3, 2005 for one count of grand theft, in violation of R.C. 2913.02(A)(1). Appellant entered a "not guilty" plea to the supplemental indictment.
 {¶ 4} A jury trial commenced on July 28, 2005. The jury found Appellant not guilty of rape and grand theft. Appellant was found guilty of kidnapping and felonious assault without the firearm specifications. He was also found guilty of the lesser included offense of unauthorized use of a motor vehicle.
 {¶ 5} Appellant has appealed his convictions, asserting one assignment of error.
 II Assignment of Error Number One
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT PRUIETT' (SIC) MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIM.R. 29."
 {¶ 6} In his sole assignment of error, Appellant has argued that the trial court erred in denying his Crim.R. 29 motion. Specifically, he has argued that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.[1] We disagree.
 {¶ 7} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
 {¶ 8} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 10} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 11} Appellant's relevant convictions are for kidnapping and felonious assault. Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(2)/(4), which states:
"(A) No person, by force, threat, or deception * * * shall remove another from the place where the person is found or restrain the liberty of the other person, for any of the following purposes:
"(2) To facilitate the commission of any felony or flight thereafter;
"* * *
"(4) To engage in sexual activity, as defined in [R.C.2907.01], with the victim against the victim's will[.]"
Appellant was also convicted of felonious assault. Pursuant to R.C. 2903.11(A)(1), "No person shall knowingly * * * [c]ause serious physical harm to another[.]"
 {¶ 12} During the trial, the jury heard the following testimony regarding the kidnapping and felonious assault charges. D. Pleat ("Pleat"), the victim in this matter, testified to the following. Pleat admitted to having a crack problem and having previous convictions for theft and escape. Pleat began dating Appellant in 2004 and in the late hours of January 4, 2005 she went to Appellant's residence to spend the night because she had argued with her roommate. Pleat spoke with Appellant and then went to sleep alone in Appellant's bedroom, she awoke to Appellant having sex with her. Pleat testified that Appellant had pulled her pants down and was having sex with her and yelling at her. Pleat said "no" and asked Appellant to stop. Appellant then started hitting Pleat with a gun over her head and body. Pleat tried to get away from Appellant by crawling out the window, but Appellant pulled her back inside. At one point Appellant stopped hitting Pleat and allowed her to put her pants on, but then he started hitting her again.
 {¶ 13} Pleat testified that Appellant also hit her with a piece of a brick, which Appellant had used to keep his door shut in his room. As Pleat attempted to crawl out of the room, Appellant was hitting her with the brick on her back and hands. Pleat eventually got away and went to a neighbor's house where the police and EMS responded. Pleat was then taken to the hospital. Pleat's injuries required surgery to her hand and staples in her head. Pleat also suffered skull fractures. She still does not have full use of her hand and another surgery is required. Pleat testified that all of the injuries photographed and treated at the hospital were caused by Appellant. She also identified several photographs of her injuries.
 {¶ 14} Pleat continued her testimony, testifying to the following. She admitted that she was a cutter,[2] but testified that she did not cause the injuries at issue. When asked about further contact with Appellant, Pleat testified that Appellant had written her letters from jail saying how much he loved her and that he wanted to marry her. Pleat admitted to writing him back.
 {¶ 15} Pleat testified to the following on cross-examination. Pleat admitted to prostituting herself to make money to buy drugs. She also admitted to being convicted of obstructing official business in May of 2005. Pleat explained that she hid her crack pipe from the police and would not let them have it. She also admitted to possibly not telling the police her real name sometime in 1999. Pleat testified that the attack happened around five in the morning, but she recognized that she informed a nurse that it happened between two and three in the morning. Pleat was yelling for help throughout the attack.
 {¶ 16} Pleat testified to the following on re-direct examination. She was currently in jail and was awaiting admittance to a drug treatment program. She did not receive a deal to testify against Appellant; in fact, she was sentenced on her obstructing official business conviction before she received her subpoena to testify in the instant matter. She also testified that had she not been incarcerated she would not have shown up to testify against Appellant.
 {¶ 17} Robert Pruiett ("Robert"), Appellant's uncle, testified that Appellant lived in his house and he entered Appellant's bedroom the morning of January 5, 2005 and noticed blood on the bed. Robert was asleep on the couch when Appellant left the house. Appellant quickly returned and grabbed what Robert believed was a coat and left again.
 {¶ 18} Adolph Brown ("Brown"), who also lived with Appellant and Robert Pruiett, testified that he entered Appellant's bedroom after Robert Pruiett told him about the blood and he also observed "a lot of blood" on Appellant's bed. He did not recall ever seeing the blood there before that morning. Some point after the attack, Appellant wrote Brown a letter and told him that Pleat injured herself and that he did not hurt her. Brown testified that when he saw Pleat in the hospital he thought she was dead.
 {¶ 19} Valerie Prulhuiere ("Prulhuiere"), a registered nurse and forensic nurse examiner with Summa Health System and the DOVE Program (Developing Options for Violent Emergencies), testified to the following for the State. She was called by the Emergency Room staff to speak with Pleat regarding the attack. Prulhuiere observed the staples in Pleat's head and found her to be agitated, yet cooperative. Pleat informed Prulhuiere that she awoke to Appellant having sex with her and that he beat her with a gun and a brick. Pleat also stated that Appellant threatened to kill her. Pleat was in extreme pain and Prulhuiere conducted her examination with great care. When she examined Pleat, Prulhuiere observed head-to-toe bruising, abrasions, swelling, lacerations, open wounds that were still bleeding, and redness. Prulhuiere identified several photographs of Pleat and explained where the injuries were on Pleat's body. Prulhuiere testified that many of the injuries were crescent shaped.
 {¶ 20} On cross-examination, Prulhuiere testified that swabs and samples were taken from Pleat and handed over to Officer Rowan of the Akron Police Department ("APD").
 {¶ 21} Officer Brian French of the APD testified to the following. Officer French was involved in arresting Appellant. Appellant was discovered hiding in a building and the S.W.A.T. team was notified. After several hours of trying to make contact with Appellant, Appellant walked out of the building and was arrested.
 {¶ 22} Detective John Bell of the APD testified to the following. He responded to Summa Hospital to interview Pleat. Pleat told Det. Bell that she was raped and assaulted by Appellant. Det. Bell observed wounds to Pleat's head, abrasions all over her body, and fractures to her right fingers. Det. Bell obtained a search warrant and proceeded to Appellant's residence. Det. Bell described Appellant's bedroom as follows: "blood on the bed, blood on the — on the window sill where [Pleat] indicated that she had tried to get out of the bedroom while the assault was occurring." Blood was visible on the mattress, a pillow, a quilt, blinds, a car door that was in the bedroom, and on the window sill, inside and out. Det. Bell testified that a revolver was found in the living room under a couch cushion and a brick was found near the bedroom door where the assault had occurred. Det. Bell identified several photographs depicting what he described to the court.
 {¶ 23} Det. Bell continued testifying to the following. The revolver was processed for fingerprints, but there were no prints on the gun. Det. Bell testified that the evidence in Appellant's bedroom was consistent with Pleat's description of the attack.
 {¶ 24} Det. Bell testified to the following on cross-examination. The revolver did not have blood, hair, or any trace evidence on it. Based on Robert's testimony there was no evidence that Appellant returned to the home after he left in the morning and Robert did not testify that Appellant stuck anything under the couch before he left. The brick/cinder block found in Appellant's room did not have fingerprints, blood, or other trace evidence on it.
 {¶ 25} On re-direct examination, Det. Bell testified that he did not send any of the samples taken from Pleat for testing because there was no evidence that any one other than Appellant was the perpetrator of the rape and assault and since Pleat had consensual sex with Appellant earlier in the day any evidence found would not prove her claims.
 {¶ 26} After Det. Bell's testimony the State rested its case and its exhibits were admitted into evidence. The exhibits included the police reports, photographs of the victim's injuries, a DOVE Program report, and hospital records which documented Pleat's injuries, including her hand fractures, abrasions, contusions, and head wounds that required staples. Appellant then made a Crim.R. 29 motion for acquittal. The trial court overruled the motion. Appellant then rested his case without presenting any evidence or testimony.
 {¶ 27} Appellant has argued that his convictions are against the manifest weight of the evidence and not supported by sufficient evidence. The State has argued that the jury was in the best position to weigh the evidence and the evidence supports Appellant's conviction. We agree with the State.
 {¶ 28} Appellant's jury had the opportunity to view the witness' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. The fact that no evidence of blood or other bodily fluids from Appellant was presented does not mean that Appellant did not kidnap and assault Pleat.[3] Moreover, we are not persuaded by Appellant's argument that his convictions must be reversed because Pleat, an admitted drug addict, former prostitute, and felon, was an unreliable witness.
 {¶ 29} Pleat's uncontroverted testimony was corroborated by tangible evidence, including her hospital records and photographs of the crime scene. Specifically, crime scene photographs showed that Appellant's bedroom, where Pleat testified Appellant attacked her, was covered in blood; there was blood on the mattress, pillow, quilt, and the car door that was in his room. Moreover, Pleat's hospital records established the serious injuries she suffered during the attack.[4] Further, Pleat's testimony that Appellant assaulted her with a brick and a gun as he restrained her by force and threats was supported by photographs showing blood on the window blinds and the window sill, both inside and outside the window, in Appellant's room.
 {¶ 30} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of kidnapping and felonious assault. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe Pleat's testimony. State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 5. Moreover, "in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." Prince v.Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. SeeDeHass, supra.
 {¶ 31} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at 4. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's sole assignment of error is without merit.
 III {¶ 32} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. concur.
[1] Appellant's assignment of error does not discuss his unauthorized use of a motor vehicle conviction; therefore, we will not address that conviction.
[2] A cutter is a person who intentionally cuts themselves with a blade, knife, or other sharp object.
[3] Given Pleat's admission that she had consensual intercourse with Appellant earlier in the evening, any evidence of intercourse that was presented would not have established a crime. Moreover, it is likely that had such evidence been presented Appellant would have argued that it only proved he had consensual intercourse with Pleat earlier in the day, not that he raped and assaulted her later that night. While Appellant is free to make such arguments we do not find them persuasive on appeal.
[4] We note that Appellant has not argued on appeal that fractures and head wounds requiring staples are not serious injuries.