[Cite as *State v. Roper*, 2012-Ohio-3526.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

JOSHUA R. ROPER

    Appellant

C.A. No.     12CA0001-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    11-CR-0260

DECISION AND JOURNAL ENTRY

Dated: August 6, 2012

---

WHITMORE, Presiding Judge.

{¶1}    Defendant-Appellant, Joshua Roper, appeals from his conviction in the Medina County Court of Common Pleas. This Court affirms.

I

{¶2}    While living with Debbie and Marlin Borsik, Heather Woutat and Tabitha Lavender found an un-activated credit card in the name of Alice Kratzer. Kratzer is Debbie Borsik's elderly mother and resides in Florida. With the help of Tegan Borsik, Kratzer's granddaughter, Woutat and Lavender activated the card.

{¶3}    Angela Miliano and Woutat were friends, having previously met while both were incarcerated. In March 2011, Miliano was living in an apartment in Medina with Cassie Jones. Roper was, at that time, dating Jones and would often stay at the apartment.

{¶4}    After finding the credit card, Woutat, Lavender, and Tegan Borsik brought the card to Miliano's apartment and activated the card. Between March 7, 2011 and March 17,

2011, Woutat, Miliano, Lavender, and Jones used the credit card some 50 times, charging in excess of $2,000. At some point during that two week period, VISA, concerned about all of the sudden activity, deactivated the card. Miliano called VISA pretending to be Kratzer and reactivated the account. Miliano also changed the address and phone number associated with the account so that notices would not be sent to the Borsiks' residence. According to Woutat, this was Roper's idea to avoid getting caught.

{¶5}   On March 10, 2011, Roper, Woutat, Miliano, Jones, and Lavender went to purchase a tattoo kit at a local tattoo supply store. Roper, an amateur tattoo artist, spent about an hour selecting the kit he wanted and then left the store while one of the women paid $300 for the kit with the stolen credit card. The following day, Roper, Jones, and Miliano returned to the tattoo supply store to purchase more ink. According to Jones, Roper knew the women were using the stolen credit card to make the purchases at the tattoo supply store because "[n]obody had any money." Roper, Miliano, Lavender, and Jones were all unemployed, and Woutat was working at a local pizza shop. According to Woutat, Roper had asked if he could purchase a tattoo kit with the credit card.

{¶6}   After the address on the account was changed, VISA sent a notification to the Borsiks' residence. After receiving the notice, Debbie Borsik contacted the police. The police were also notified by a clerk at a Circle K when Woutat, Miliano, and Tegan Borsik tried to use the credit card. The clerk told the police that she knew the women and knew that the card did not belong to them.

{¶7}   Woutat, Miliano, Jones, and Lavender all pleaded to charges of misuse of a credit card. The State also charged Roper with one count of misuse of a credit card (elderly) in violation of R.C. 2913.21(B)(2), a felony of the fifth degree. No allegation was made that Roper

ever swiped the card or signed for a transaction himself. Instead, the State alleged that Roper knew the stolen card was used to purchase his tattoo supplies. The State further alleged Roper used the credit card to put pre-paid minutes on his cell phone.

{¶8} A jury found Roper guilty, and the court sentenced him to nine months in prison. Roper now appeals from his conviction and raises one assignment of error for our review.

II

Assignment of Error

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT OF "GUILTY" ON THE SOLE COUNT OF MISUSE OF A CREDIT CARD IN VIOLATION OF R.C. 2913.21(B)(2)&(D)(4), A FIFTH-DEGREE FELONY, AND DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE STATE FAILED TO ESTABLISH THAT DEFENDANT-APPELLANT POSSESSED THE REQUISITE MENTAL STATE OF "KNOWING OR HAVING REASONABLE CAUSE TO BELIEVE" THAT THE CREDIT CARD WAS OBTAINED, RETAINED, OR BEING USED BY HIS FEMALE ASSOCIATES IN VIOLATION OF LAW.

{¶9} In his sole assignment of error, Roper argues that there is insufficient evidence to support his conviction, and even if there is sufficient evidence his conviction is against the manifest weight of the evidence. We disagree.

**Sufficiency of the Evidence**

{¶10} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991),

paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶11} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶12} Roper stipulated (1) the victim was an elderly person, and (2) the credit card was used in violation of law. The only element in dispute at trial was whether Roper knew or had reasonable cause to believe the credit card was being used in violation of law. Roper argues that the evidence presented by the State was insufficient for any rational trier of fact to conclude he knew or had reasonable cause to believe the credit card was being used illegally. We disagree.

{¶13} Woutat testified that Roper was present when the call was made to activate the credit card and that everyone, including Roper, knew the card was stolen. According to Woutat, "[w]e all knew exactly what was happening." After the card had been deactivated by VISA, Roper suggested changing the mailing address and phone number on the account so that notices would not be sent to Debbie Borsik. The group discussed making payments on the card to prevent getting caught. Woutat further testified that Roper asked if he could use the credit card to purchase the tattoo kit.

{¶14} All three of the State's witnesses testified that there was no doubt in their minds that Roper knew the card was stolen at the time the tattoo kit was purchased for him. Viewing the evidence in a light most favorable to the State, we conclude there is sufficient evidence to support the finding that Roper knew or reasonably should have known that the credit card was being used illegally.

**Against the Manifest Weight of the Evidence**

{¶15} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins* at 387; *Eastley v. Volkman*, Slip Opinion No. 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387. An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *State v. Prade*, 139 Ohio App.3d 676, 696 (9th Dist.2000).

{¶16} Roper argues the greater amount of credible evidence supports his version of the events. Specifically, that he did not know or have reasonable cause to believe the credit card was stolen or that the stolen credit card was used to purchase his tattoo supplies or the pre-paid minutes for his phone. We disagree.

{¶17} The witnesses presented various versions of the events during Roper's trial. In reaching its verdict, however, the jury was entitled to believe all, part, or none of the testimony of each witness. *Prince v. Jordan,* 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). "[T]he weight to be given the evidence

and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶18} In his interview with Detective Patrick Sloan, Roper told him that he did not know anything about the credit card and that he was in jail at the time the card was stolen. However, Roper also testified that he had no idea when the card was stolen and could not explain why he thought it occurred during the time he was in jail.

{¶19} During that same interview, Roper admitted to Detective Sloan that he went to the tattoo supply store with his co-defendants to purchase a tattoo kit, but did not know who paid for the kit or how that person paid for it. Roper said that he picked out the kit he wanted and left the store. Detective Sloan testified that he found this to be suspicious. Roper testified that he had an agreement with Woutat. She agreed to purchase the tattoo kit and he would give her free tattoos to pay it off. Inexplicably, Roper did not inform Detective Sloan of the alleged arrangement and did not even know if Woutat was the one that paid for the kit.

{¶20} All of the State's witnesses, at some point during their testimony, said that there was no doubt in their minds that Roper knew the card was stolen. Woutat testified that Roper was present at the time the call was placed to activate the card. Woutat further testified that it was Roper's idea to change the address and phone number on the account to avoid getting caught and that he asked to use the card to purchase a tattoo kit.

{¶21} Miliano testified that Roper used the stolen card to purchase pre-paid minutes for his phone. Miliano said Roper took the credit card number from the card itself and entered the number into his phone. The front of the credit card was clearly marked with Kratzer's name.

**{¶22}** After reviewing the record and giving the trier of fact its due deference as to the issue of credibility, we cannot conclude that this is an extraordinary case where the jury clearly lost its way.

**{¶23}** Roper's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Accordingly, Roper's sole assignment of error is overruled.

## III

**{¶24}** Roper's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
BELFANCE, J.
CONCUR.


APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.