[Cite as *State v. Zaree*, 2017-Ohio-9081.]

STATE OF OHIO         )            IN THE COURT OF APPEALS
                           )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN     )

STATE OF OHIO                 C.A. No.     17CA011111

     Appellee

     v.                         APPEAL FROM JUDGMENT
                              ENTERED IN THE
KHASHAYAR ZAREE       OBERLIN MUNICIPAL COURT
                              COUNTY OF LORAIN, OHIO
     Appellant             CASE No.    16TRC03035

DECISION AND JOURNAL ENTRY

Dated: December 18, 2017

---

CALLAHAN, Judge

**{¶1}** Appellant, Khashayar Zaree, appeals from his conviction in the Oberlin Municipal Court. This Court affirms.

I.

**{¶2}** Mr. Zaree was charged with multiple offenses as a result of a traffic stop that occurred on July 9, 2016. The matter proceeded to jury trial and Adam Shaw, the arresting officer, testified for the State. Mr. Zaree testified in his own defense. The jury found Mr. Zaree guilty of an OVI offense, in violation of R.C. 4511.19(A)(2), but acquitted him of the remaining charges. The court found Mr. Zaree guilty of the minor misdemeanor traffic control device offense, in violation of R.C. 4511.12. Mr. Zaree was sentenced accordingly and now appeals his OVI conviction raising a single assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE CONVICTION OF [MR. ZAREE] OF A VIOLATION OF R.C. []4511.19(A)(2) WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶3}    In his sole assignment of error, Mr. Zaree argues that his OVI conviction is against the manifest weight of the evidence because the evidence was contradictory and the testifying officer was not credible. This Court disagrees.

{¶4}    "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *State v. Otten,* 33 Ohio App.3d 339, 340 (9th Dist.1986).  Weight of the evidence concerns whether a greater amount of credible evidence supports one side of the issue than supports the other.  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, "the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*., quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases in which the evidence weighs heavily against the conviction. *Otten* at 340.

{¶5}    "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 Ohio App. LEXIS 6174, *19 (Dec. 22, 1999).  An appellate court will not overturn

a judgment on this basis alone, and may not merely substitute its judgment for that of the factfinder. *State v. Serva*, 9th Dist. Summit No. 23323, 2007-Ohio-3060, ¶ 8.

{¶6}    Mr. Zaree was convicted under R.C. 4511.19(A)(2). As it pertains to Mr. Zaree, R.C. 4511.19(A)(2) prohibits the operation of a vehicle within Ohio while under the influence of alcohol if, at the time of the operation, the person has previously been convicted of or pleaded guilty to a violation under R.C. 4511.19 within twenty years and, subsequent to being arrested for the OVI, the person refuses to submit to a chemical test after being asked to do so by a law enforcement officer and advised of the consequences of refusal. Therefore, the jury had to find that Mr. Zaree 1) was operating a vehicle in Ohio, 2) was under the influence of alcohol at the time, 3) had been previously convicted of OVI within twenty years, 4) was offered a chemical test, and 5) refused to take the chemical test.

{¶7}    Mr. Zaree does not dispute that he was operating a vehicle in Ohio or that he was convicted of OVI in 2009, a fact to which he stipulated at trial. He argues the weight of the evidence does not support the jury's findings that he was under the influence of alcohol when he was stopped, that he was offered the breathalyzer test, and that he refused the breathalyzer test.

{¶8}    The trial court instructed the jury regarding the definition of "under the influence" as follows:

> This means that the Defendant consumed some alcohol or (inaudible) drug of abuse (inaudible) evidence of drug of abuse.  Okay. Means the Defendant consumed some alcohol in such a quantity, whether small or great, would adversely affected and noticeably impaired his actions, reaction or mental processes under circumstances then existing and deprived him of (inaudible) intellect and control of himself which he would have otherwise possessed.
>
> The question is not how much alcohol would affect an ordinary person.  The question is what effect did any alcohol consumed by the Defendant have on him at the time and place involved. If the consumption of alcohol so affected the nervous system (inaudible) or muscles of the Defendant so as to impair to a

noticeable degree his ability to operate the vehicle, then he was under the influence.

*See State v. Hardy*, 28 Ohio St.2d 89, 91-92 (1971); *State v. Steele*, 95 Ohio App. 107, 111-112 (3d Dist.1952); *Ohio Jury Instructions*, CR Section 711.19 (Rev. Jan. 21, 2016).

**Testimony of Adam Shaw**

{¶9} Adam Shaw testified that on July 9, 2016 he was a deputy with the Lorain County Sheriff's Department,[1] working an "OVI saturation blitz patrol." Shaw was in uniform and a marked cruiser. At 1:59 A.M., he observed a vehicle travelling eastbound on State Route 113 at a high rate of speed through the intersection of State Route 113 and State Route 58 without making any attempt to slow. At the time, Shaw was travelling southbound on State Route 58 approaching the intersection and had a green left-hand light to go east. Shaw activated his overhead lights and sirens and caught up to the vehicle. Mr. Zaree was the vehicle's driver and sole occupant.

{¶10} Shaw approached the vehicle and told Mr. Zaree that he stopped him for running the red light. He testified he observed that Mr. Zaree "had red, glassy, watery eyes" and that "[t]here was a very strong odor of alcohol coming from the passenger compartment of the vehicle." He saw no alcohol in the vehicle's passenger compartment. Shaw testified that, in accordance with his training, red and glassy eyes could indicate impairment. When asked, Mr. Zaree denied having had anything to drink.

{¶11} Shaw returned to his cruiser with Mr. Zaree's driver's license to make sure Mr. Zaree was valid and had no warrants. He then returned to Mr. Zaree's vehicle and asked him to exit the vehicle and, with Mr. Zaree's back to the cruiser, which had the emergency lights turned off, conducted several field sobriety tests. Prior to conducting the tests Shaw asked Mr. Zaree if

---

[1] Shaw was no longer with the department at the time of his testimony.

he had any medical conditions or was taking any medications. Mr. Zaree denied both, but stated he had a sore knee and wore contacts.

{¶12} Shaw explained how he administered the Horizontal Gaze Nystagmus test[2] ("HGN test") and testified that he observed Mr. Zaree exhibit six out of a possible six clues. Shaw next explained how he administered the walk and turn test on the paved portion of the side of the road. He observed Mr. Zaree exhibit five out of a possible eight clues. Finally, Shaw explained how he administered the one-leg stand test and testified that Mr. Zaree exhibited two out of a possible four clues. According to Shaw, as to each of the field sobriety tests, exhibiting two or more clues is an indication of impairment. Shaw testified that, although Mr. Zaree had two hearing aids, he never asked him to repeat the instructions and never acted as if he could not hear him.

{¶13} After some resistance by Mr. Zaree, Shaw placed him under arrest and transported him to the Lorain County Jail to offer him a breath test. According to Shaw, he read Mr. Zaree the BMV 2255 form that described to him the consequences of him refusing to take the breathalyzer test. Mr. Zaree signed the form acknowledging receipt. Shaw testified that he then asked Mr. Zaree to take the test and Mr. Zaree refused.

{¶14} Shaw testified that he was no longer with the Lorain County Sheriff's Department because he had been terminated due to an alleged policy violation stemming from a pursuit that occurred the month after Mr. Zaree's arrest.

---

[2] Because Mr. Zaree did not challenge the field sobriety tests in a motion to suppress we discuss them only to the extent that Shaw's testimony conflicts with that of Mr. Zaree.

{¶15}   On cross-examination Shaw testified that he had been "written up" other than for the alleged policy violation that led to his termination. He also testified that he was not using radar at the time he first saw Mr. Zaree and he did not cite Mr. Zaree for speeding. Shaw conceded that he observed no weaving or lane violations and that the dash cam in his vehicle was down for the month of July due to a faulty microphone recording line.  There was no audio or video recording of the field sobriety tests. Shaw conceded that he had never met Mr. Zaree and did not know if he was having problems with his eyes. Shaw denied that Mr. Zaree had ever asked him to repeat instructions because he was unable to hear, but conceded that Mr. Zaree stopped the one-leg stand test because he said his knee was sore.

### Testimony of Khashayar Zaree

{¶16}   Mr. Zaree testified that he "blew out" his knee in high school and that he has hearing issues which require him to wear hearing aids and sometimes makes it difficult for him to hear when people's backs are turned.

{¶17}   At the time of his arrest Mr. Zaree was travelling to the Elyria Walmart for contact solution because he had run out.  Mr. Zaree denied going through a red light and insisted that the light was "[a]bsolutely green" when he went through the intersection. He testified that Shaw did not take his information and return to his cruiser but, instead, immediately asked him to step out of his vehicle. Mr. Zaree reiterated that he had had nothing to drink that night or for "a couple [of] weeks to a month" prior to being stopped. He had no alcohol in his vehicle.

{¶18}   Mr. Zaree testified that he agreed to the field sobriety tests but told the deputy that he might not be able to hear.  He said there were times he had to ask the deputy to repeat the instructions. Mr. Zaree testified that he was facing the cruiser and "all the lights were going" when the deputy administered the HGN test. He testified that he did not perform the walk and

turn test on the pavement but "kind of off to the side a little bit." He testified that he "[a]bsolutely [did] not" stumble or fall. As to the one-leg stand test, Mr. Zaree testified that he "might have stopped before it was the 30 seconds" because his knee was bothering him and because he was wearing dress shoes that did not provide traction. According to Mr. Zaree, he performed the tests "[p]erfectly." Mr. Zaree also denied that he resisted arrest.

{¶19} As to the BMV 2255 form, Mr. Zaree did not deny that it was his signature on the form but denied being offered a breath test at the scene or at the jail. He testified he signed the form because was told "'[y]ou have to sign this or you're going to jail.'"

{¶20} On cross-examination Mr. Zaree conceded that the Lorain Walmart is a 24-hour Walmart and is much closer to his home than the Elyria Walmart. However, according to Mr. Zaree, he was driving to the Elyria Walmart because the service at the Lorain Walmart "isn't up to [his] standard," "bothers [him] a little bit," and he's "not comfortable going to the Lorain [] one." Mr. Zaree wore his "dressy shoes" to the Walmart that night because "that's [his] style" and "[t]hat's what [he] wear[s] when [he] go[es] somewhere."

{¶21} Mr. Zaree conceded that his job as a car detailer requires kneeling and bending to thoroughly clean the vehicles, but testified that he gets knee pads at times because "I do what I have to do."

{¶22} Mr. Zaree also conceded that he had taken a breathalyzer test in 2009 and knew what a breathalyzer test was. He reiterated that he "[a]bsolutely" was not asked to take the breathalyzer after his current OVI arrest.

\*\*\*

{¶23} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of

the syllabus. The factfinder "'is free to believe all, part, or none of the testimony of each witness.'" *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Having been presented with two divergent scenarios of the events leading up to and after Mr. Zaree's arrest, it was the jury's duty to determine what portion of each witnesses' testimony was worthy of belief and what portion was not worthy of belief. This Court remains mindful that the jury had an opportunity to view the witnesses and "was in the best position to assess the credibility of the evidence presented by the parties at trial." *State v. Klingel,* 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, ¶ 22. "[T]his Court will not overturn the [] verdict on a manifest weight of the evidence challenge simply because the jury chose to believe [a] certain witness['s] testimony." (Internal quotations and citations omitted.) *State v. Binford*, 9th Dist. Summit No. 27950, 2016-Ohio-7678, ¶ 10.

**{¶24}** After a thorough and independent review of the entire record, this Court cannot say that the jury lost its way in finding Mr. Zaree guilty of OVI, in violation of R.C. 4511.19(A)(2). This Court concludes that this is not the exceptional case where the evidence weighs heavily against Mr. Zaree's conviction. Mr. Zaree's assignment of error is overruled.

III.

**{¶25}** Mr. Zaree's assignment of error is overruled and the judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

R.J. BUDWAY, Attorney at Law, for Appellant.

FRANK CARLSON, Attorney at Law, for Appellee.