[Cite as *State v. Fluttrow*, 2018-Ohio-3613.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

      PLAINITIFF-APPELLEE,                    CASE NO.  12-18-03

      v.

GREGORY C. FLUTTROW,                  O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2017 CR 0053

Judgment Affirmed

Date of Decision:   September 10, 2018

APPEARANCES:

    *Michael J. Short* **for Appellant**

    *Katherine G. Porter* **for Appellee**

**PRESTON, J.**

**{¶1}** Defendant-appellant, Gregory C. Fluttrow ("Fluttrow"), appeals the February 27, 2018 judgment entry of sentence of the Putnam County Court of Common Pleas. We affirm.

**{¶2}** On September 9, 2017, Deputy Randy Weller ("Deputy Weller") of the Putnam County Sheriff's Office initiated a stop of Fluttrow while he was operating his bicycle on Road D near Continental, Ohio after receiving a report that Fluttrow was operating his bicycle while under the influence of alcohol. (Feb. 27, 2018 Tr. at 84, 94, 96, 99). Following field-sobriety tests, Fluttrow was arrested for operating a vehicle while under the influence of alcohol or drugs ("OVI"). (*Id.* at 103-104); (State's Ex. B). Subsequent to his arrest, Fluttrow refused to submit to a breath-alcohol-concentration ("BAC") test. (Feb. 27, 2018 Tr. at 104-107). Fluttrow has five prior OVI convictions from 2006, 2009, 2011, 2015, and 2016. (*Id.* at 119-120); (State's Ex. C).

**{¶3}** On September 27, 2017, the Putnam County Grand Jury indicted Fluttrow on Counts One and Two of OVI in violation of R.C. 4511.19(A)(1)(a), (G)(1)(d) or 4511.19(A)(2)(a), (b), fourth-degree felonies, and Count Three of possession of an open container in violation of R.C. 4301.62(B)(3), a minor misdemeanor. (Doc. No. 1).

{¶4} On October 3, 2017, Fluttrow appeared for arraignment and pled not guilty to the counts of the indictment. (Doc. No. 9).

{¶5} The case proceeded to jury trial on February 27, 2018. (Doc. No. 32). That same day, the jury found Fluttrow guilty of Count One of the indictment. (*Id.*). After accepting the jury's finding of guilt, the trial court sentenced Fluttrow to five years of community control. (Doc. No. 33). The next day, at the State's request, the trial court dismissed Counts Two and Three. (Doc. Nos. 36, 37).

{¶6} On March 7, 2018, Fluttrow filed a notice of appeal. (Doc. No. 23). He raises two assignments of error for our review.

### Assignment of Error No. I

**The convictions [sic] are against the manifest weight of the evidence.**

{¶7} In his first assignment of error, Fluttrow argues that his OVI conviction is against the manifest weight of the evidence. In particular, he argues that the jury clearly lost its way by concluding that he was under the influence of alcohol.

{¶8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380,

-3-

387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶9} Fluttrow was convicted of OVI in violation of R.C. 4511.19(A)(2), which provides, in relevant part:

> (2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this

section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

Accordingly, the State was required to prove that Fluttrow "1) was operating a vehicle in Ohio, 2) was under the influence of alcohol at the time, 3) had been previously convicted of OVI within twenty years, 4) was offered a chemical test, and 5) refused to take the chemical test." *State v. Zaree*, 9th Dist. Lorain No. 17CA011111, 2017-Ohio-9081, ¶ 6.

{¶10} Because it is the only element that Fluttrow challenges on appeal, we will address only whether the trier of fact clearly lost its way in concluding that Fluttrow was under the influence of alcohol. To prove that a defendant is under the influence of alcohol, the State must "'prove that the defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol.'" *State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 30, quoting *State v. Lowman*, 82 Ohio App.3d 831, 836 (12th Dist.1992), citing *State v. Bakst*, 30 Ohio App.3d 141, 145 (1st Dist.1986), and citing *State v. Spicer*, 12th Dist. Preble No. CA90-11-022, 1991 WL 164591, *2 (Aug. 26, 1991). "[T]he State 'need

not establish a threshold level of alcohol concentration in the defendant's body.'" *Id.*, quoting *Lowman* at 836.

{¶11} At trial, the State offered the testimony of two witnesses—Deputy Weller and Tina Breisinger ("Breisinger"), an employee of the Main Stop Carryout in Continental, Ohio. (Feb. 27, 2018 Tr. at 84, 94). Breisinger testified that she called the Putnam County Sheriff's Office on September 9, 2017 to report that Fluttrow appeared at the Main Stop Carryout and that he appeared to be under the influence of alcohol. (*Id.* at 85, 88). According to Breisinger, she concluded that Fluttrow appeared to be under the influence of alcohol based on his "slurred speech, stumbling around, [and] random comments about things." (*Id.* at 88). A recording of Breisinger's call to the sheriff's office was played for the jury. (*Id.* at 86); (State's Ex. A). In that recording, Breisinger can be heard informing the sheriff's office that Fluttrow appeared to be "pretty trashed" when he left the Main Stop Carryout on his bicycle after purchasing beer. (State's Ex. A).

{¶12} On cross-examination, Breisinger testified that she does not know if Fluttrow has any neurological issues; rather, she assumed he was under the influence of alcohol based on his appearance. (Feb. 27, 2018 Tr. at 91).

{¶13} On re-direct examination, Breisinger testified that Fluttrow's behavior was not "any different" from previous times he patronized the Main Stop Carryout. (*Id.* at 92). She testified that "[h]e was always acting like that when he came in."

(*Id.*). When asked how she determined that Fluttrow "was almost always intoxicated" when he patronized the Main Stop Carryout, Breisinger responded that she made that conclusion because Fluttrow acted "strange, different." (*Id.* at 93).

{¶14} Next, Deputy Weller testified that he responded to Breisinger's call regarding Fluttrow. (*Id.* at 97). When Deputy Weller located Fluttrow, he observed Fluttrow operating his bicycle on Road D "kind of drift[ing] out to the side of the road [and] back." (*Id.* at 99-100). Based on the topography of the roadway, Deputy Weller was concerned for Fluttrow's safety from the way that he was operating his bicycle because "if a car would have come down through there at any rate of speed at all, [the car] would [not] have had time to get stopped, and he wouldn't have had time to get over." (*Id.* at 102).

{¶15} After Fluttrow stopped, Deputy Weller engaged Fluttrow and "could smell alcohol on him," "could see he was kind of uneasy on his feet," and observed that he was having "issues" with "get[ting his bicycle] to stand up." (*Id.* at 100-101). According to Deputy Weller, Fluttrow informed him that "he had bought beer and was heading home." (*Id.* at 101). Fluttrow admitted to Deputy Weller that "he had been drinking at home a little bit." (*Id.*). Based on his training and experience, Deputy Weller determined that Fluttrow was under the influence of alcohol after observing Fluttrow "[k]ind of uneasy on his feet, his speech was somewhat slurred, glassy eyes" and drifting within the lane while operating his bicycle. (*Id.* at 102).

After making those observations, Deputy Weller administered field-sobriety testing. (*Id.* at 103). According to Deputy Weller, Fluttrow exhibited "[a]ll six" clues that he was impaired during the horizontal-gaze-nystagmus test. (*Id.* at 104). Following field-sobriety tests, Fluttrow refused to submit to a BAC test. (*Id.* at 106-107).

{¶16} On cross-examination, Deputy Weller testified that Fluttrow "would drift to the center [of the one-lane] road and then drift back," not across the entirety of the roadway. (*Id.* at 114). Deputy Weller agreed that it could be difficult to "park a bicycle on grass." (*Id.* at 115). Deputy Weller testified that he had prior encounters with Fluttrow but that he was "[n]ot as bad" as those encounters. (*Id.* at 116). Even though, Deputy Weller testified that his cruiser's dash camera captured his encounter with Fluttrow, it was not offered into evidence. (*Id.* at 117-118).

{¶17} At the conclusion of the State's evidence, the State moved to admit its exhibits, which were admitted without objection, and rested. (*Id.* at 87, 109, 119-120). Fluttrow made a Crim.R. 29(A) motion, which the trial court denied. (*Id.* at 121-122). Fluttrow did not provide any evidence and rested. (*Id.* at 122). Fluttrow did not renew his Crim.R. 29(A) motion. The case was submitted to the jury, which found Fluttrow guilty as to Count One of the indictment. (*Id.* at 154, 160-161).

{¶18} After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination,

we cannot conclude that the trier of fact clearly lost its way and created a manifest injustice.

{¶19} To prove an impaired ability to operate a vehicle, the State may introduce evidence of a defendant's performance on field-sobriety tests as well as physiological evidence, such as the odor of alcohol, bloodshot eyes, and slurred speech. *State v. Simms*, 9th Dist. Summit No. 23957, 2008-Ohio-4848, ¶ 6. "[A] trier of fact is permitted to consider refusal to submit to testing as evidence of intoxication." *United States v. Westcott*, S.D.Ohio No. 3:06-PO-97, 2013 WL 6909927, *3 (Dec. 31, 2013), citing *Maumee v. Anistik*, 69 Ohio St.3d 339, 343 (1994) and *State v. Holnapy*, 194 Ohio App.3d 444, 2011-Ohio-2995, ¶ 61 (11th Dist.). In addition to his testimony regarding Fluttrow's performance on the field-sobriety tests, Deputy Weller testified that he smelled the odor of alcohol on Fluttrow, that Fluttrow slurred his speech, and that his eyes were glassy. Deputy Weller also informed the jury that Fluttrow refused to submit to a BAC test.

{¶20} Despite that evidence, Fluttrow contends that the trier of fact lost its way in concluding that he was under the influence of alcohol because (1) there is no testimony that he "violated any traffic law with his operation of his bicycle"; (2) "[t]he audio and video recording of the encounter [with law enforcement] were not presented to the jury"; (3) "[t]he convenience store clerk was equivocal about Mr. Fluttrow's demeanor"; and (4) "the jury was provided with testimony [regarding his

prior OVI convictions] that should have been objected to as inadmissible."
(Appellant's Brief at 4).

**{¶21}** As we addressed above, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. "The factfinder '"is free to believe all, part, or none of the testimony of each witness."'" *Zaree*, 2017-Ohio-9081, at ¶ 23, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court remains mindful that the jury had an opportunity to view the witnesses and 'was in the best position to assess the credibility of the evidence presented by the parties at trial.'" *Id.*, quoting *State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, ¶ 22. "'[T]his Court will not overturn the [ ] verdict on a manifest weight of the evidence challenge simply because the jury chose to believe [a] certain witness['s] testimony." *Id.*, quoting *State v. Binford*, 9th Dist. Summit No. 27950, 2016-Ohio-7678, ¶ 10.

**{¶22}** Because evidence of a traffic violation is not necessary to prove a violation of R.C. 4511.19(A)(2), any alleged lack of such evidence is a matter of weight for the trier of fact to weigh. Also a matter of credibility for the trier of fact is the weight to afford Deputy Weller's uncontested account of his encounter with Fluttrow absent viewing the footage of Deputy Weller's cruiser's dashboard camera.

We also defer to the factfinder's determination regarding Breisinger's credibility in her testimony pertaining to Fluttrow's demeanor.

{¶23} Yet, contrary to Fluttrow's assertion that Breisinger's testimony was equivocal, when reviewed in context, her testimony was not contradictory. That is, Breisinger's statement that Fluttrow is "strange" and "different" did not equivocate her assessment that he appeared to be under the influence of alcohol. Rather, she was describing for the jury how she determined that he appeared to be under the influence of alcohol based on her interactions with Fluttrow at the Main Stop Carryout. Further, as we noted above, the jury's decision to conclude that Fluttrow was under the influence of alcohol is not based solely on Breisinger's description of Fluttrow's demeanor. That is, as we described above, the jury also heard Deputy Weller's description of Fluttrow's demeanor and his conclusion, based on his training and experience, that Fluttrow was under the influence of alcohol.

{¶24} Finally, Fluttrow's assertion that his conviction is against the manifest weight of the evidence because the trier of fact heard inadmissible testimony regarding prior incidents during which Fluttrow was found to be under the influence of alcohol is meritless. Fluttrow did not separately assign any error challenging the admissibility of evidence at trial as he is required to do under App.R. 12 and 16. Accordingly, we decline to address the admissibility of that evidence. *See State v. Dunn*, 4th Dist. Pickaway No. 97CA26, 1998 WL 337079, *8 (June 17, 1998), citing

App.R. 12(A)(2). *See also State v. Sierra*, 3d Dist. Hancock Nos. 5-14-15, 5-14-19, 5-14-20, 5-14-21, and 5-14-22, 2015-Ohio-1692, ¶ 9. Instead, we conclude that any evidence of prior incidents during which Fluttrow was found to be under the influence of alcohol does not weigh against the trier of fact's conclusion that Fluttrow was under the influence of alcohol in this case.

{¶25} For these reasons, we are not persuaded that Fluttrow's OVI conviction under R.C. 4511.19(A)(2) must be reversed and a new trial ordered.

{¶26} Fluttrow's first assignment of error is overruled.

**Assignment of Error No. II**

**The defendant received ineffective assistance of counsel.**

{¶27} In his second assignment of error, Fluttrow argues that his trial counsel was ineffective. Specifically, Fluttrow argues that his trial counsel failed to (1) object to the admission of prejudicial testimony, (2) request that a juror be dismissed from the jury, and (3) file a motion to suppress evidence challenging Deputy Weller's traffic stop of Fluttrow. In sum, Fluttrow argues that those cumulative errors altered the outcome of his trial.

{¶28} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668,

687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶29} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

{¶30} Notwithstanding Fluttrow's assertions that his trial counsel was ineffective, Fluttrow's argument presented under his second assignment of error is completely devoid of any discussion of the prejudice prong. "This in and of itself is insufficient under App.R. 16(A)(7) and in contravention of the standard that

places the burden on the defendant to prove both prongs of the ineffective assistance of counsel claim." *State v. Hayes*, 8th Dist. Cuyahoga No. 105048, 2017-Ohio-7718, ¶ 16, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 223, citing *Strickland* qat 687, and *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. Because Fluttrow failed to satisfy his burden of demonstrating that he was prejudiced by any of these alleged errors alone or together, we decline to root out any possible argument for him. *See State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 226 (concluding that Osie failed "to carry his burden of showing ineffective assistance" because he offered no analysis explaining "why the statements should have been sealed or how the claimed omission meets the *Strickland* criteria of deficient performance and prejudice"); *Hayes* at ¶ 19 ("Having failed to demonstrate prejudice even if we presumed a deficient performance and having failed to address the statutory presumption of guilt, as required under App.R. 16(A)(7) to prove an error occurred, Hayes's second assignment of error must be overruled."); *State v. Jones*, 6th Dist. Lucas No. L-09-1262, 2011-Ohio-2173, ¶ 48 (rejecting Jones's ineffective-assistance-of-counsel argument because, in part, he failed to separately argue the alleged instances of ineffective assistance); *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 (9th Dist.) ("[I]f an argument exists that can support [an] assignment of error, it is not this [c]ourt's duty to root it out."). *See also* App.R. 12(A)(2); App.R. 16(A)(7).

**{¶31}** Accordingly, Fluttrow's second assignment of error is overruled.

**{¶32}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**