[Cite as *State v. Susanek*, 2024-Ohio-5298.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    31070 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALANNA SUSANEK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR-2023-05-1756 |

DECISION AND JOURNAL ENTRY

Dated: November 6, 2024

STEVENSON, Presiding Judge.

{¶1}    Appellant, Alanna Susanek, appeals from her conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    D.E. and Ms. Susanek were long-time friends. It was not unusual for the friends to engage in sexual activity and for D.E. to spend the night at Ms. Susanek's residence.

{¶3}    At trial, D.E. testified to the events that lead to criminal charges against Ms. Susanek. After spending the evening of May 16, 2023, together, D.E. fell asleep on a downstairs couch at Ms. Susanek's home. D.E. awoke around 7:00 a.m. the morning of May 17, 2023. D.E. is a heavy sleeper and, before he awoke, Ms. Susanek performed a sexual act on him. D.E. was in a hurry to gather his belongings and leave that morning as he had to be at work across town at 8:00 a.m.

{¶4} D.E. is a machinist and he normally carries a knife with a five-inch blade for work. As D.E. started gathering his belongings that morning, he realized that he did not have his knife or phone that had been right beside him. Around the time D.E. realized that his phone and knife were missing, he saw Ms. Susanek go upstairs.

{¶5} D.E. continued looking for his missing knife and phone while Ms. Susanek was upstairs. When Ms. Susanek came back downstairs, she went into the laundry room that was off the living room where D.E. had slept. D.E., who was still in the living room, told Ms. Susanek that he needed his knife and phone so he could leave for work.

{¶6} D.E. heard Ms. Susanek talking while she was in the laundry room. While he could not decipher everything Ms. Susanek was saying, D.E. heard Ms. Susanek say "[w]hy are you doing this?" D.E. also heard something breaking and a "crashing and banging noise" coming from the laundry room.

{¶7} Ms. Susanek was holding the knife in her hand, without the sheath, when she came out of the laundry room. Ms. Susanek, who D.E. described as a "jealous friend[,]" seemed "agitated and angry[.]" D.E. suspected that Ms. Susanek had seen messages from other women on his phone. Ms. Susanek was walking at a fast pace with the knife by her side. D.E. remained standing by the couch where he had slept.

{¶8} Despite his requests, Ms. Susanek would not give the knife back to D.E. Because she would not give him his knife, D.E. decided that he had to physically retrieve the knife from Ms. Susanek. As D.E. tried to retrieve the knife, Ms. Susanek raised the knife near her head and above her shoulders and she "came towards" D.E. with the knife. Ms. Susanek struck D.E.'s neck, shoulders, and ears with the knife. D.E. saw the blood and realized that he had been stabbed.

{¶9} D.E. and Ms. Susanek continued to struggle over the knife until they reached the front door of the residence, where D.E. obtained possession of the knife. D.E. exited the premises once he had possession of the knife and went to a neighbor's house. D.E. told the neighbor that he had been stabbed and the neighbor called 911. D.E. was transported to a hospital where he was treated for his injuries.

{¶10} D.E. testified that his injuries included "[l]acerations up to my ear, on my neck to my ear" as well as lacerations on his jaw, hand, and chest area. D.E. got stitches to treat his lacerations. D.E. also testified to the cut on his ear and the fact that part of his ear "might fall off . . . ." D.E. has scars on his neck, ear, jaw, and jaw line from the stabbing incident.

{¶11} Ms. Susanek testified in her own defense at trial. Ms. Susanek testified that she was with D.E. on May 16, 2023, and that D.E. had spent the night sleeping on a downstairs couch.

{¶12} Ms. Susanek testified that she woke up at 6:00 a.m. on May 17, 2023. Ms. Susanek performed a sexual act on D.E. after his second alarm went off. Ms. Susanek did not complete the sexual act as D.E. is a heavy sleeper and was still sleeping.

{¶13} According to Ms. Susanek, D.E. had his phone and other belongings when he woke up that morning. Ms. Susanek acknowledged touching D.E.'s phone, but she testified that she only touched his phone to turn off his alarm. Ms. Susanek testified that she never took D.E.'s phone or knife.

{¶14} Ms. Susanek was aware that D.E. was looking for his phone when he woke up. Ms. Susanek testified that she did not know where D.E.'s phone was and that she ignored D.E. when he was asking about the phone.

{¶15} Ms. Susanek claimed that she was in the laundry room when she heard D.E. break something in the living room. It is Ms. Susanek's position that D.E. started the altercation and that he approached her with the knife when she went back into the living room.

{¶16} Ms. Susanek testified that, at some point during the altercation, both she and D.E. were holding the knife and that they fell onto to the couch. Ms. Susanek "felt the knife cut [D.E.'s] neck" when they were "grappling on the couch[.]" Ms. Susanek claimed that she and D.E. struggled over the knife all the way to the front door. Ms. Susanek was not sure whether D.E. always had the knife in his hand during the struggle. Ms. Susanek testified that she was defending herself during the struggle and she acknowledged telling a police officer that she "had to do it."

{¶17} In addition to D.E. and Ms. Susanek, a detective, lieutenant, and two officers testified at trial. Among other exhibits, the jury was shown pictures of D.E.'s injuries.

{¶18} A jury found Ms. Susanek guilty of one count of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), a felony of the second degree. The trial court sentenced Ms. Susanek to an indefinite prison term of seven to 10.5 years. Ms. Susanek appeals her conviction, raising four assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

**[MS. SUSANEK'S] CONVICTION[] [WAS] NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW[.]**

{¶19} Ms. Susanek argues in her first assignment of error that the State failed to offer sufficient evidence to disprove self-defense. For the reasons set forth below, this assignment of error is overruled.

{¶20} Self-defense is an affirmative defense, not an element of a crime. *State v. Messenger*, 2022-Ohio-4562, ¶ 24; R.C. 2901.05(B)(1). Accordingly, when "a defendant charged

with an offense involving the use of force" asserts self-defense, she "has the burden of producing legally sufficient evidence that [her] use of force was in self-defense." *Messenger* at ¶ 25. The Ohio Supreme Court has established that a sufficiency-of-the-evidence standard of review applies to this burden of production. *Id.* at ¶ 26.

{¶21} When self-defense is asserted, the State has the burden of "disproving the defendant's self-defense claim beyond a reasonable doubt . . . ." *Id.* at ¶ 27. The State's burden of persuasion "is subject to a manifest-weight review on appeal . . . ." *Id.*; *State v. Greenstreet*, 2023-Ohio-4224, ¶ 12 (9th Dist.) (a "manifest weight of the evidence standard of review [applies] to the State's burden of disproving self-defense rather than a sufficiency of the evidence review . . . "); *State v. McElroy*, 2023-Ohio-1609, ¶ 14 (9th Dist.) (this Court recognized that, pursuant to *Messenger*, the State's burden of disproving the defense of self-defense is subject to a manifest weight review on appeal rather than a sufficiency analysis).

{¶22} Ms. Susanek argues that the State failed to offer sufficient evidence to disprove self-defense. "A defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Messenger* at ¶ 25. The State's "burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal," not a sufficiency review. *Id.* at ¶ 27. Therefore, Ms. Susanek's first assignment of error is based on an improper statement of the law and is, accordingly, overruled on this basis.

## ASSIGNMENT OF ERROR TWO

**[MS. SUSANEK'S] CONVICTION[] [WAS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]**

{¶23} Ms. Susanek argues in her second assignment of error that her conviction was against the manifest weight of the evidence. We disagree.

{¶24} When deciding whether a criminal conviction is against the manifest weight of the evidence, this Court must consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on a manifest weight of the evidence challenge is reserved for exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

{¶25} Ms. Susanek was found guilty of felonious assault. R.C. 2903.11 governs felonious assaults and provides that "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). "Deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1) and R.C. 2923.11(A).

{¶26} Ms. Susanek does not dispute that D.E. sustained injuries from the knife. Ms. Susanek argues that her conviction is against the manifest weight of the evidence "because the trier of fact ignored a more plausible theory of events . . . ." A more plausible theory, according to Ms. Susanek, is that D.E. is the one who became angry and initiated the attack. Ms. Susanek maintains that she was defending herself in the struggle with D.E.

{¶27} The State argues that the felonious assault conviction is not against the manifest weight of the evidence simply because the jury did not believe Ms. Susanek's version of events. The State asserts that it presented ample evidence to support the conviction, including D.E.'s trial testimony.

{¶28} Having reviewed the record, we cannot conclude that this is an exceptional case where the jury lost its way by convicting Ms. Susanek. *See Otten*, 33 Ohio App.3d at 340. D.E. testified to his long friendship with Ms. Susanek, a friendship that sometimes-included sexual activity. D.E. described Ms. Susanek as a "jealous friend" and he testified that messages from other women were on his phone that was missing the morning of May 17, 2023. Before the altercation with the knife, D.E. heard Ms. Susanek say "[w]hy are you doing this?" D.E. heard something break and he heard a "crashing and banging noise" coming from the laundry room where Ms. Susanek was at the time. D.E. observed that Ms. Susanek seemed "agitated and angry" that morning.

{¶29} D.E. testified that Ms. Susanek had the knife in her hand, without the sheath, when she came into the living room. D.E. testified that Ms. Susanek initiated the attack and that, in the attack, she raised the knife near her head and above her shoulders and came at him with the knife and stabbed him. After D.E. suffered knife wounds on multiple parts of his body, he left the home and immediately went to a neighbor's house and the neighbor called 911. Ms. Susanek had no knife wounds.

{¶30} As this Court has stated, "we 'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), quoting *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.). "This is because 'the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly[,]' and 'is free to believe all, part, or none of the testimony of each witness.'" *Tolliver* at ¶ 15, quoting *State v. Johnson*, 2010-Ohio-3296, ¶ 15 (9th Dist.) and *Prince v. Jordan*, 2004-Ohio-7184, ¶ 35 (9th Dist.).

**{¶31}** Upon our review of the entire record, we conclude that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Ms. Susanek's conviction. *See Otten,* 33 Ohio App.3d at 340. This is also not an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387. Accordingly, Ms. Susanek's second assignment of error is overruled.

**ASSIGNMENT OF ERROR THREE**

**[MS. SUSANEK] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL[.]**

**{¶32}** Ms. Susanek argues in her third assignment of error that she was denied effective assistance of counsel as trial counsel failed to ask for an aggravated assault jury instruction. We disagree.

**{¶33}** To prevail on a claim of ineffective assistance of counsel, Ms. Susanek must establish (1) her counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) but for his counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In addition, to establish prejudice, Ms. Susanek must show that there existed

"a reasonable probability that, but for [her] counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

**{¶34}** Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

**{¶35}** Ms. Susanek argues that trial counsel should have requested an aggravated assault jury instruction. Ms. Susanek asserts that an aggravated assault jury instruction would be consistent with her self-defense claim and that, had such an instruction been given, the outcome of trial would have been different.

**{¶36}** The State argues that trial counsel made a reasonable strategic decision in seeking an acquittal based on the self-defense claim and that, considering the self-defense claim and jury instruction, a request for an aggravated assault instruction would have been futile.

**{¶37}** Aggravated assault is an inferior-degree offense to felonious assault. *State v. Fedrick*, 2017-Ohio-2635, ¶ 8 (9th Dist.), citing *State v. Deem*, 40 Ohio St.3d 205, at 210-211 (1988). The offenses are similar except that aggravated assault requires proof that the defendant acted under the influence of sudden passion or in a fit of rage brought about by serious provocation. *Fedrick* at ¶ 15; R.C. 2903.12(A)(1). "[A]ggravated assault . . . [is] incompatible with a theory of self-defense because self-defense requires proof of fear while aggravated assault . . . require[s] a showing of a sudden passion or rage." *State v. Hughkeith*, 2023-Ohio-1217, ¶ 102 (8th Dist.); *see also State v. Adcox*, 2000 WL 422400, *4 (9th Dist. Apr. 19, 2000).

**{¶38}** Like Ms. Susanek, the defendant in *State v. Andrews*, 2010-Ohio-6126 (9th Dist.), was convicted of felonious assault and he argued on appeal that trial counsel should have requested

an aggravated assault jury instruction at trial. This Court first noted in *Andrews* that the defendant had claimed self-defense at trial and that, "[i]f the defendant claims self-defense at trial, there is a strong presumption that counsel's failure to request a lesser-included offense instruction is a strategic decision made to avoid confusing the jury or lessening the chance of an acquittal." *Id.* at ¶ 32. This Court next noted that aggravated assault is inconsistent with a self-defense theory. *Id.* at ¶ 33. We concluded in *Andrews* that the "decision *not* to request a jury instruction on aggravated assault is consistent with [the defendant's] claim of self-defense and does not amount to ineffective assistance." (Emphasis added.) *Id.*

{¶39} Ms. Susanek argued at trial that she acted in self-defense. Ms. Susanek argued that D.E. initiated the altercation; she did not argue that D.E. provoked her to attack. It is presumed that trial counsel hoped to secure an acquittal and did not want to risk a conviction for an inferior-degree offense. *Andrews* at ¶ 32. Trial counsel's decision to not request an aggravated assault jury instruction is consistent with Ms. Susanek's self-defense claim and does not amount to ineffective assistance. *Id*.

{¶40} Ms. Susanek has not demonstrated error on the part of her trial counsel. She has not demonstrated that trial counsel's conduct was outside the range of reasonable professional assistance and, thus, has failed to satisfy the first prong set forth in *Strickland. Strickland*, 466 U.S. at 691. Having determined that trial counsel's performance was not deficient, we need not proceed to an analysis of whether Ms. Susanek was prejudiced by counsel's conduct. Ms. Susanek's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

**THE TRIAL COURT ERRED BY NOT PERMITTING [MS. SUSANEK] TO BE PRESENT DURING A JUROR REPLACEMENT[.]**

{¶41} Ms. Susanek argues in her fourth assignment of error that the trial court erred when it replaced a juror outside of her presence. For the reasons set forth below, Ms. Susanek's fourth assignment of error is overruled.

{¶42} After the jury began its deliberations, the trial court informed the State and defense counsel on the record that it excused a juror due to a family emergency and that it intended to replace the excused juror with one of the alternate jurors. The trial court stated that it would normally bring Ms. Susanek into the courtroom for that proceeding, but it was made aware that Ms. Susanek was wearing a jail-provided orange jumpsuit in the holding area of the courthouse. The trial court gave defense counsel the option of waiving Ms. Susanek's presence. Defense counsel waived Ms. Susanek's presence, explaining that Ms. Susanek might be prejudiced if the jury saw her in the orange jumpsuit. Defense counsel stated that this was "[his] decision" and that he had not spoken with Ms. Susanek about this issue. The trial court accepted defense counsel's waiver of Ms. Susanek's presence.

{¶43} Ms. Susanek argues that "the trial court erred by not permitting [her] to be present during a juror replacement[.]" Based on the record, the trial court did not prevent Ms. Susanek from attending the juror replacement proceeding. Rather, defense counsel waived Ms. Susanek's right to be present. The Ohio Supreme Court has recognized that "[c]ounsel is permitted to waive the client's right to be present." *State v. Beasley*, 2018-Ohio-493, ¶ 143.

{¶44} Further, Ms. Susanek has not established that she has suffered prejudice. *See Beasley* at ¶ 143. Ms. Susanek's absence "does not necessarily result in prejudicial or constitutional error." *State v. Davis*, 2008-Ohio-2, ¶ 90. The Court stated in *Davis* that "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would

be thwarted by his absence, and to that extent only." *Id.*, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-108 (1934.)

{¶45} Ms. Susanek acknowledges that she "was present during the initial voir dire and impaneling of the jury and the selection of alternate jurors." While Ms. Susanek argues generally that she was prejudiced because she was not able to confer with defense counsel during the process of replacing the excused juror, she has not pointed to any specific error that occurred during the replacement of the juror. Accordingly, Ms. Susanek has not established that her absence during the juror replacement deprived her of a "fair and just" trial. *Davis* at ¶ 90; *see State v. Hale*, 2008-Ohio-3426, ¶ 103 (holding that the defendant's absence in a proceeding was not prejudicial because "the jury received no testimony or evidence in [the defendant's] absence.").

{¶46} Ms. Susanek's fourth assignment of error is, accordingly, overruled.

III.

{¶47} Ms. Susanek's first, second, third, and fourth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT


CARR, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.